UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

WILLIAM W. HORSMAN, III, and )
JAMES R. JACKSON, )
　　　　　　　　　　　　　　　　 )
　　　Plaintiffs, )
　　　　　　　　　　　　　　　　 )
vs. ) CIVIL ACTION No. CV 94-S-0918-NE
　　　　　　　　　　　　　　　　 )
MORRIS THIGPEN, )
and JOE S. HOPPER, )
　　　　　　　　　　　　　　　　 )
　　　Defendants. )

ENTERED
MAR 1 0 1997

MEMORANDUM OPINION

　　　This action is before the court on the Magistrate Judge's report and recommendation, and defendants' objections thereto. Plaintiffs' action is based on 42 U.S.C. § 1983. Plaintiffs, who are prisoners at Limestone Correctional Facility, allege the following conduct by defendants violated their constitutional right to bodily privacy: (1) removing metal doors from the community bathrooms of the prison dormitory; (2) using clear shower curtains; and (3) stationing female officers in areas where they are able to view inmates while showering and using the toilets. The Magistrate Judge recommends that the shower curtain claim be dismissed, but the other claims allowed to proceed.

　　　The court has considered the entire file in this action, together with the Magistrate Judge's Report and Recommendation, and the objections of defendants, and has reached an independent conclusion that the Magistrate Judge's Report and Recommendation is due to be approved, except as discussed below. The court hereby adopts and approves the findings and recommendation of the Magistrate Judge as the conclusions of the court in all respects,

40

MAR-10-1997 16:29 5510741 P.004

except the recommendation to allow plaintiffs to proceed on their claims against defendants for removal of metal doors to the community bathroom and placing female guards in shower and bathroom areas. This court concludes that all of plaintiffs' claims are due to be dismissed.

## I. DISCUSSION

Prisoners, despite their conviction and confinement, do not forfeit all constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Nevertheless, prisoners' constitutional rights are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). In *Turner*, the Supreme Court set forth the standard for evaluating prisoners' constitutional claims. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261. The Court identified four factors relevant in analyzing the reasonableness of a regulation:

> (a) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (c) whether and the extent to which accommodation of the

2

asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally; and (d) whether the regulation represents an 'exaggerated response' to prison concerns.

*Harris v. Thigpen*, 941 F.2d 1495, 1516 (11th Cir. 1991)(citing *Turner*, 482 U.S. at 89-91, 107 S.Ct. at 2261-63).

### A.  Removing Metal Bathroom Doors

Federal courts should not, "in the name of the Constitution, become ... enmeshed in the minutiae of prison operations." *Bell*, 441 U.S. at 562, 99 S.Ct. at 1886.

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions.  Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. ... "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Bell*, 441 U.S. at 547-48, 99 S.Ct. at 1878-79 (citations omitted).

Upon consideration of the factors expressed in *Turner*, this court concludes that removal of metal bathroom doors, like the use of clear plastic shower curtains, is a reasonable attempt to promote the legitimate penological objective of providing adequate security.  This court must accord "wide-ranging deference" to prison officials' efforts to maintain institutional security. Accordingly, that claim is due to be dismissed.

3

B.  **Stationing Female Officers in Shower and Bathroom Areas**

The undisputed evidence reveals that approximately one third of the correctional officers employed by the Alabama Department of Corrections are female. (Affidavit of Charles R. Sutton, at 1.) Charles R. Sutton, the Associate Commissioner over Institutions for the Alabama Department of Corrections states:

> It is my opinion that restricting women from working in the areas where male inmates are showering, would put an atrocious burden on the shift commanders when they are making assignments. Also, some shifts have a majority of women which would make it impossible to keep from assigning a woman to posts near showers.

(*Id.*, 1-2.)

The plaintiffs in the case of *Collins v. Herring*, CV-94-PT-2606 (N.D. Ala. July 24, 1996), also objected to "female officers being allowed to view them while they are using the showers and toilets." *Collins*, at 2. Approximately 25% of the prison guards at the correctional facility where the *Collins* plaintiffs were incarcerated also were female. The court adopted the following reasoning of the magistrate judge:

> The magistrate judge concludes that due to the fact that females constitute a significant portion of the guard staff at Donaldson, they must be utilized if the prison is to maintain an adequate security level. If female guards were removed from all areas in which showers, urinals, and toilets are open, as suggested by the plaintiffs, the security staffing would be severely reduced, necessarily undermining the institutional security and safety. Furthermore, the removal of female officers from certain areas of the prison could violate civil rights laws governing equal opportunity of women in the work place. For these reasons, the Department of Corrections' policy of gender neutral guard assignments meets the reasonableness test set forth in *Turner*. The plaintiffs have not proposed an alternative that would accommodate the plaintiffs' rights at *deminimus* [sic] cost to the department's valid penological interests.

4

> Thus, although the plaintiffs' concerns are understandable, it is concluded that the use of female guards to supervise male inmates, even while the inmates are nude, is a reasonable attempt to promote the legitimate penological objective of providing adequate security and also protecting the civil rights of the female guards. See, e.g., *Timm v. Gunter*, 917 F.2d 1093 (8th Cir. 1990); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988). ... The plaintiffs' privacy rights must yield under the *Turner* test to the need for adequate institutional security.

*Collins*, at 4-5. This court agrees with the reasoning in *Collins* and, therefore, concludes plaintiffs' claim relating to the placement of female prison guards is due to be dismissed.

## II. CONCLUSION

A final judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 10th day of March, 1997.

_____
United States District Judge

5